Good morning, Your Honors. May it please the Court, I am Juliet Topasio-Sarmiento, the attorney for the petitioner Rosalyn Tse. The issue is whether the BIA abused its discretion in denying the application for asylum based on past persecution or a well-founded fear of future persecution based on political opinion, where it failed to consider all relevant factors before ruling and it did not provide a reasoned explanation for its conclusions. The petitioner's response is affirmative in this case. The BIA abuses its discretion if it fails to state its reasons and show proper consideration of all factors when weighing equities and denying relief. When the BIA disregards or distorts important aspects of an alien's claim, denial of relief is arbitrary and the BIA is considered to have abused its discretion. The BIA's denial of relief can be affirmed only on the basis articulated in the decision and the Ninth Circuit Court cannot assume the BIA considered factors that it failed to mention in its decision. For asylum based on past persecution, an applicant must show an incident or incidents that rise to the level of persecution, that it is on account of one of the statutorily protected grounds and is committed by the government or forces the government is either unable or unwilling to control. And when considering an asylum claim, the harm an applicant has suffered is considered cumulatively. An applicant may suffer persecution because of the cumulative effect of several incidents, one of which rises to the level of persecution. In this case, the IJ held that Ms. Say failed to present specific facts establishing that she was persecuted on account of a protected ground. This finding, which was adopted by the BIA, is not supported by substantial evidence. The evidence shows that she was a member and leader of a Christian political group, Unity, that opposed communism, especially factions advocating the overthrow of the Philippine government. Unity's purpose was to stop the communist physical and threatened abuse in Mindanao. From 1984 to 87 at public forums and at the University of the Visayas, Ms. Say openly denounced the communists and urged everyone to oppose them as well. She appeared regularly on hour-long radio shows denouncing the communists. The communists knew of Ms. Say's political opinion, and as a direct result of her anti-communist conduct, the communists invaded the Say home, attacked, and beat Ms. Say, her parents, and their household help. She received numerous threatening letters and telephone calls at home. The communists stalked, harassed, and verbally assailed her in public and in front of her home. Finally, the communists kidnapped her. Kennedy, may I ask you a question? I know you're reading from a prepared script, but let's deal with the facts of this case a little bit. Your client left the Philippines and went to Chile for three years. Then she came to this country in 1992, and she's been here ever since. The last time that she was in the Philippines was, what, 1988? There have been some changes in the Philippines since then. The country conditions indicate that this government, the Philippine government, has entered into a series of peace agreements with formerly terrorist organizations. But most importantly, I think the problem you have is that I think that the presumption of future persecution, which arises from her past persecution, has been rebutted by the evidence that her family has relocated in the Philippines. Her family, who was also persecuted, has relocated in the Philippines and other parts of the Philippines. But this particular insurgency, which so troubled her, is in the southern island of Mindanao, and that the family is in other northern portions of the Philippines. That is not correct, Your Honor. The other family members live in other parts of the southern Philippines, not in southern Mindanao. All right. But they live in the southern regions of the Philippines. And they're living there without being persecuted. As far as we know, I don't know. So there's no evidence that they're being persecuted. Why can't she relocate? Why isn't the government correctly saying that the presumption of persecution has been rebutted by country condition changes and by the fact that the evidence is clear that she can relocate to other parts of the Philippines and not be subject to further persecution? Well, if we're only talking about the 2005 country reports, Your Honor, it did still say that even though the numbers of the insurgents have decreased, they are still active countrywide. And in her region of the area, they're quite active. Killings of civilians, kidnappings of civilians, and bombings of civilians are done both by the communists and the opposite. Talking about the 2010 State Department country conditions report and putting that together with the fact that her family is living in the Philippines and is not subject to persecution, doesn't that form substantial evidence for the IJ and the BIA's affirmance that she could relocate and, therefore, is not subject to being a refugee? I think that's a little too broad. The immigration judge said the country is big. We know the country has many islands. But as far as my client is concerned, she still fears them, the communists and the Muslims, whoever. Bottom line is the subjective fear is not enough. You've got to prove objective probability of persecution. I understand that. The NPA still works countrywide. Not all of the things that they do have been reported and not all of the insurgents are abiding by the truce agreement. As we all know, there are splinter groups and there are plenty of insurgents who do not abide by the truce agreement. In fact, there was even, last week, one of the leaders of the insurgent groups who signed the agreement with a cache of weapons ready to attack someone. And he was recently arrested in Manila. So even though other members of her family live in other parts of southern Philippines, that doesn't necessarily mean that they are necessarily safe. As she had stated in her hearing testimony, both hearings, her mother doesn't live in any one place. Her sisters and brothers move from place to place. They have no stable home. She doesn't even know where they live and she hasn't had contact with them since the last hearing. So she doesn't know where her family is at this time. Well, you know where they live, don't you? No, I don't know where they live. Well, isn't there some evidence in the record that the family lives in various places in the Philippines? They're in various places in the southern part of the Philippines. One of them is called Dumaguete, which used to be called Nisanese Oriental. I don't know where that is, and I just know that it is north of the island of Mindanao. There are other places that her family have been living that I don't know where they are, but they're not in central Luzon, for instance. They're not in the island of Cebu. They are in other places south of there. They could be in the island of Samar. They could be in other Palawan. All of those other islands are in southern Philippines and they're easy to get to, move from, and travel between. All right. And that goes for her as well as the NPA? That goes for her and the NPA. They can all move around, and they're quite mobile, all of them. And something that is not commonly known, and I know that she knows and imparted to me as well, is that the American government has been waging war over there in a quiet manner because they are in Basilan Island as well, also in southern Philippines, but they're based out of Clark Air Base in Angeles City in Tarlac. Ever since I was a little girl, the insurgents there have been fighting. And, I mean, on a personal note, my uncle was killed there. He was a Philippine National Army lieutenant killed by the insurgents in 1954. They're still fighting, and they haven't been stopped, even though there is a truce. So as far as the presumption of evidence, my client's feeling and my position for her is that it has not been rebutted. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Remy Darocha-Fodu, representing the Attorney General. Your Honors, this is a fact-bound case with no major issue of law. But before you claim to me. Before you get into what happened to her and whether there was persecution, could I just ask you, because I guess I may not have everything, is there a finding with respect to her ability to relocate or whether the government met its burden on rebuttal to show that there are changed conditions and that she can relocate? Can you tell me where it is? Yes, Your Honor. There was a finding. The immigration judge actually made that finding on page 53 in the record. Page what? 53. 53. ER 53? AR 53. Yes, Your Honor. Made that finding in the record that the government had rebutted a presumption of a well-founded fear of future persecution. The judge stated that the Philippines is a large country. There were only 7 percent Muslim population and that the current government was not in favor of the communist insurgents nor supporting or protecting them in any way. And that respondent that had presented absolutely no objective evidence to show that any Muslim group or communist group has a continuing interest in her, which is actually the most important factor in this case. I'm looking. Oh, pardon me. Go ahead. Yeah. And this was after. This got a little convoluted. Yes, Your Honor.  So this was after the board had remanded to the immigration judge. Yes, Your Honor. Okay. Yes. So basically the most important fact and issue in this case is the fact that Petitina has not been able to show that whether it's a Muslim group or a communist group, anyone has any continuing interest in her. Her claim is that in the 1980s, she suffered persecution on account of her political opinion or her religion. I mean, we're not sure which, by people she could not identify and whom she has sometimes described as communists and at other times as Muslims. The agency made a dispositive finding that even assuming past persecution, Petitina failed to present any evidence of a continuing interest in her since the 1980s. And that's, again, in page 53 of the record. Let me interrupt you for just a second. I've been reading it, AR 53. And my question is, upon whom is the burden of proving that she could relocate? Well, it is the burden of the government to prove that she could relocate. Because all it says here is that Respondent, that's the alien, has failed to present any evidence to show that even if there were a continuing interest in her by these two nebulous groups that she describes, that she could not relocate safely to another part of the Philippines. It sounds to me like the IJ put the burden of proof on the Respondent. And you've just told me, and I think you're correct, that to rebut the presumption of future persecution which arises from evidence, and this person is credible, of past persecution, the possibility of relocating within the country must be proven. Now, did the IJ make an error here by assigning the burden of proof of ability to relocate to the Respondent, I mean to the Petitioner, rather than to the government? What do you say to that? Your Honor, I think what happened here is that I was inartfully stated. Because the first – in that – the very first sentence, the IJ stated that the government had rebutted the presumption of a well-founded fear of future persecution in the Philippines. And basically, I think what it – That's true. The government has rebutted the presumption of a well-founded fear of future persecution. But then later, it goes to the issue that the alien did not prove that she could not relocate. Yes, Your Honor. That's why I'm saying that that was inartfully stated. But if you look in the records – That's very kind and generous of you to say inartfully. It also could be termed erroneously. Well, Your Honor, because the record states clearly – shows clearly that in the – at the hearing, the DHS successfully rebutted the presumption of a well-founded fear of fear and asked Petitioner specific questions as to why she could not relocate and whether there was anyone today seeking to harm her in the Philippines. You're saying that those questions carried the government's burden of proof by getting negative answers from an adverse witness. Yes, Your Honor. And in fact, I believe what also happened here is that the burden then shifted back. We have a situation where there's a, you know, shift of the burden back to the Petitioner. Well, what did the government put in to show the current conditions in the country? Basically, the country report to the – for the Philippines. Which year? For – I believe it was 2006. And also 2010, right? Pardon me? And 2010? 2010. I can't recall right now what the – Maybe I was wrong on that. Yeah. Well, you know, I don't have that here. But what the IJ says is that the government has rebutted the presumption the Philippines is a large country. There's only 7 percent Muslim population. The current government is not in favor of the communist insurgents nor supporting or protecting them in any way. Is that from the country report? It is from the country report and also based on Petitioner's own testimony and the questions that were asked and the responses elicited based on those questions. Petitioner has not stated that anyone has a continuing interest in her since the 1980s. In fact, the unity group that she headed, she's not even aware that this group still exists today. All she's saying, all she has said is made blanket assertions based on the activities of these insurgents in the country that they're going to harm her. But she has to move a step ahead of that and show that these people are really interested in harming her. The insurgents that she was worried about were communists? Well, it is not clear. No, I know. But her theory, the way she described it with the uniforms and everything, if we take that as true, they're communists. Yes, Your Honor, that they're the communists. And she has not shown that these people are still interested in her. In fact, her responses were, I have no idea, when she was asked whether they were still seeking her. But in response to Judge Beyer's question, you would say that the country report doesn't show that there's still any active communist? There are reports of, there are sporadic reports of violence in the country, but not, you know, in fact, the record shows that a lot of what is going on in the country, these people are targeting. Reports, don't we have U.S. Marines fighting there? Well, I'm not aware of U.S. Marines fighting there. Counselor has stated that. Well, I'm aware of one because I know a captain who was just there. Well, you know, the U.S. Marines might be there fighting terrorism as a whole, but that still does not establish that petitioner in particular is being thought about, thought after by these communist insurgents. She has not made that claim. And her claims are so. But that's not, but the problem is that's not her burden once she's established that she, that this happened in the past. Yes. And DHS actually reported that evidence, and it was then shifted back to Petitioner to establish that she is still being thought after today. The rebuttal that you're referring to is in the 2006 country report? Yes, Your Honor. Yes, Your Honor. So basically, Petitioner has not been able to provide any specific information showing that she in particular will be sought out by these communist insurgents or Muslims. Instead, well, she stated it was the young communists that determined leaders at this time. And she herself said she was merely speculating and that she was not sure. And also, to address the issue of Petitioner's family, the record shows clearly that it is only Petitioner's youngest brother, who was similarly situated to her, that she's not aware of where he is today. Her other family members are living peacefully in the Philippines, and they have not had any problems whatsoever. Also, because Petitioner has not established that anyone has a continuing interest in her, and her case is so remote in time, she has not been able to establish that, you know, she's eligible for asylum. Thank you. You have used your time. Thank you very much, Your Honor. You have about 40 seconds if you want to say anything. Thank you, Your Honor. My stepson was in Manila, and he's serving in the Air Force in Basilan today. In the present case, the last country reports was 2005, and that was what was put in the record. And it states there that the New People's Army continues to operate nationwide, committed numerous human rights violations, including kidnappings and killings, and the terrorist Abu Sayyaf Group bombs civilian targets. The fact that she didn't know them by name correctly, either as Abu Sayyaf or the Philippine communists, we should attribute like the IJ did, that she is not a sophisticated person, but she knew the people who attacked her by their clothing and their demeanor. Thank you, Your Honors. Thank you. Thanks. Thank you. The case just argued and submitted for decision.
judges: Anello, Schroeder, Bea